UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| David A. Berg, individually and in his capacity as President/Chief Manager of Majestic Properties & Development, LLC, | File No. 19-cv-2676 (ECT/KMM) |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| Janie Warren Berg, individually and in her capacity as Governor, Member, Secretary and Treasurer of Majestic Properties & Development, LLC; Lighthouse Management Group, Inc., a Minnesota Corporation; Kathleen Gearin, as Special Master appointed by the Minnesota District Court; and Majestic Properties & Development, LLC, a Minnesota Limited Liability Company, | |
| Defendants. | |

---

Frederic W. Knaak, Holstad & Knaak PLC, St. Paul, MN, for Plaintiff David A. Berg.

Scott M. Rodman and Kendal K. O'Keefe, Arnold, Rodman & Kretchmer PLLC, Bloomington, MN, for Defendant Janie Warren Berg.

Brian A. Dillon, Lathrop GPM LLP, Minneapolis, MN, for Defendant Lighthouse Management Group, Inc.

Bryan R. Feldhaus and Michelle K. Kuhl, Lommen Abdo, P.A., Minneapolis, MN, for Defendant Kathleen Gearin.

---

Plaintiff David A. Berg is a dissatisfied party to an ongoing Minnesota state-court divorce proceeding. He has several complaints about the state courts' handling of that case. These include, among others, that the state district court violated his federal constitutional

rights when it found him in default and ordered him jailed as a contempt sanction for discovery violations and that the Minnesota Court of Appeals violated his federal constitutional rights when it denied his petition for a writ of prohibition. In this case, Mr. Berg seeks "declaratory and injunctive relief directed at the state district court," Compl. ¶ 1 [ECF No. 1], essentially to undo that court's adverse orders. Mr. Berg also seeks damages from his former spouse stemming from her alleged failure to account for money received from the operations of a business, though as Mr. Berg states these same allegations have been and continue to be considered a "central and critical issue in the state court case." Compl. ¶ 47. Defendants seek dismissal on several grounds. Because there are ongoing state-court proceedings that implicate important state interests and offer Mr. Berg an opportunity to pursue his claims, this case must be dismissed under *Younger v. Harris*, 401 U.S. 37 (1971). One defendant also seeks sanctions against Mr. Berg's counsel for filing and persisting with this case. That motion will be denied.

I

Mr. Berg has sued three defendants in this case. They are his former spouse, Janie Warren Berg; the special master appointed to oversee and resolve discovery disputes in the dissolution proceeding, former Ramsey County District Court Judge Kathleen R. Gearin; and the receiver appointed to preserve the Bergs' marital estate pending the outcome of the dissolution proceeding, Lighthouse Management Group, Inc. Mr. Berg's complaint might be understood to say that there is a fourth defendant, a business organization owned jointly by the Bergs called Majestic Properties & Development, LLC. Compl. ¶ 14. But Mr. Berg acknowledged at the hearing on these motions that Majestic had not been served with

2

process, and a close reading of the complaint reveals no claims against, and no request for relief from, Majestic. Though he seeks "declaratory and injunctive relief directed at the state district court," Compl. ¶ 1, Mr. Berg has not sued the state district court.

Understanding Mr. Berg's claims in this case requires summarizing the proceedings in the state-court dissolution case. Ms. Berg brought the case in Dakota County District Court on June 15, 2017. *Id.* ¶ 5. Presiding Judge Karen J. Asphaug appointed Judge Gearin as special master just over one year later, in July 2018, "for purposes of overseeing and resolving any discovery issues between the parties," assertedly with the Bergs' agreement. *Id.* ¶¶ 22, 8; Feldhaus Decl., Ex. 1 [ECF No. 22-1]. As special master, Judge Gearin was given "the sole discretion to determine the appropriate procedures for resolution of all assigned matters and . . . the authority to take all appropriate measures to perform the assigned duties." *Id.* Judge Gearin was given authority to "impose upon a party any sanction other than contempt" and was authorized to recommend to Judge Asphaug a contempt sanction against any party. *Id.* Judge Asphaug subsequently appointed Lighthouse as receiver "to protect [the Bergs'] marital estate and to function in the manner of a neutral financial expert." Compl. ¶ 7; Sigelman Aff., Exs. B, C at 4 [ECF Nos. 26-2, 26-3]. In addition to its primary responsibility to "review all marital and non-marital assets to determine and identify funds available to meet [Mr. Berg's] obligations . . . and ensure these obligations are timely paid," Lighthouse also was authorized to "identify receivership property to be liquidated in order to raise funds to satisfy [Mr. Berg's obligations]" and "investigate and analyze any claim, controversy or allegation either party makes against the other with respect to the control, preservation, depreciation, diversion, disposition,

3

distribution, misappropriation, or management of marital assets or resources . . . and []
make written findings thereof to be made available to counsel for the parties." Sigelman
Aff., Ex. C at 8.

Mr. Berg's conduct during the dissolution proceedings eventually prompted Judge
Asphaug to find Mr. Berg in contempt and order him to serve 90 days in the Dakota County
Jail, and the proceedings leading to Mr. Berg's confinement were extensive. To
summarize, in an order dated June 24, 2019, Judge Gearin recommended that Mr. Berg "be
found in contempt of court for his refusal to adequately answer . . . interrogatories and
requests for production of documents." Feldhaus Decl., Ex. 2 at 3 [ECF No. 22-2]. In her
order, Judge Gearin observed that Mr. Berg "ha[d] consistently refused to participate in the
discovery process in good faith." *Id.* at 1–2. Judge Gearin explained that she had "noted
[Mr. Berg's] lack of cooperation in prior orders," and "[d]espite past warnings, [Mr. Berg]
continue[d] to drag his feet and ignore past orders[.]" *Id.* at 2. On July 19, after conducting
an evidentiary hearing, Judge Asphaug found Mr. Berg in constructive civil contempt.
Feldhaus Decl., Ex. 3 at 9–10 [ECF No. 22-3]. Judge Asphaug sentenced Mr. Berg "to the
Dakota County Jail for a period not to exceed 30 days," but stayed the sentence for 30 days
to allow Mr. Berg the chance to purge his contempt by meeting a number of conditions
including complying with outstanding discovery requests and orders, cooperating with
Lighthouse, taking steps to preserve marital assets, and paying attorneys' fees in
compliance with previous orders. *Id.* at 11–14. Judge Asphaug warned that failure to
comply would "result in [Mr. Berg's] inability to introduce or use any documents or
exhibits at trial, . . . adverse inferences drawn against [Mr. Berg] with regards to all matters

4

for which discovery ha[d] theretofore been ordered but not completed . . . [and Ms. Berg's] right to proceed by default in" the remainder of the dissolution proceeding. *Id.* at 15. On August 7, Judge Asphaug held a hearing to determine whether Mr. Berg had complied with the terms of her July 19 order. *See id.*, Ex. 4 ¶ 2 [ECF No. 22-4]. Judge Asphaug assigned Judge Gearin the task of reviewing the record to assist in determining whether Mr. Berg had complied. *Id.* Judge Gearin found that Mr. Berg had not complied. *Id.*, Ex. 5 [ECF No. 22-5]. On September 6, 2019, Judge Asphaug granted Ms. Berg's motion to proceed by default but stayed the execution of Mr. Berg's jail sentence to permit him more time to purge the constructive contempt finding. *Id.*, Ex. 6 [ECF No. 22-6]. One week later, on September 13, Mr. Berg filed a petition for writ of prohibition with the Minnesota Court of Appeals seeking to restrain Judge Asphaug from enforcing her orders appointing Lighthouse as receiver and granting Ms. Berg's motion to proceed by default. *Id.*, Ex. 8 [ECF No. 22-8]. The Court of Appeals promptly denied the petition in an order dated October 1. *Id.*, Ex. 9 [ECF No. 22-9]. Meanwhile, at a hearing on September 25, Judge Asphaug ordered the Bergs to sign documents to enable the sale of real property held in receivership. *Id.*, Ex. 7 at 2 [ECF No. 22-7]. Mr. Berg signed some documents as ordered, but he refused to sign others related to the sale of one parcel of real property. *Id.* Judge Asphaug afforded Mr. Berg the opportunity to sell other items of personal property to cover the anticipated amount that would have been available had he signed the sale documents for the one parcel of real property, but Mr. Berg refused. *Id.* After giving both Mr. Berg and his counsel opportunities to speak, after giving Mr. Berg additional opportunities to sign the real-property sale documents, and after making certain that Mr. Berg was aware

5

of the possible consequences of his actions, Judge Asphaug found Mr. Berg in direct civil contempt and sentenced him to serve 90 days in the Dakota County Jail. *Id.* at 2–4. Judge Asphaug's contempt order permitted Mr. Berg to purge the contempt and gain his release and freedom "immediately" if he signed the real-property sale documents, *id.*, but Mr. Berg did not do so and apparently served the entire 90-day jail sentence.

During the dissolution proceeding, Mr. Berg claimed repeatedly that Ms. Berg was misappropriating funds belonging to Majestic, but his claims were considered and rejected. *See generally*, Ms. Berg's Index of Exhibits, Exs. 5–7 [ECF Nos. 15-5–15-7]. Pursuant to its court-ordered authority, Lighthouse investigated these claims and submitted three separate reports describing its conclusions. *Id.* In its first report, Lighthouse described its investigation of Mr. Berg's "suggest[ion] that Ms. Berg ha[d] misappropriated assets or diverted revenues from [Mr. and Ms. Berg's] properties" in an amount that may have been "as high as $1 million." *Id.*, Ex. 5 at 7. Lighthouse concluded that although Ms. Berg had deposited rental income "directly into her personal account as opposed to the business account of Majestic, . . . Mr. Berg's claims of misuse or embezzlement by Ms. Berg are without merit." *Id.* at 8. In its second report, Lighthouse noted that Mr. Berg "[c]ontinued [making] complaints regarding alleged illegal activities and missing or misappropriated funds by Ms. Berg," but failed to provide any new information to Lighthouse that might warrant further investigation. *Id.* Ex. 6 [ECF No. 15-6 at 6–7]. Lighthouse informed Judge Asphaug that it had "reiterated to Mr. Berg [its] findings [regarding his allegations of embezzlement] and referred him to the [first] report," but that "Mr. Berg ignore[d] the findings and repeat[ed] demands to investigate Ms. Berg further." *Id.* "Absent new

6

information," Lighthouse did not pursue Mr. Berg's claims further than it had in the first report. *Id.* After Lighthouse submitted its second report, Mr. Berg provided additional information to Lighthouse, which Lighthouse addressed in a third report. *Id.*, Ex. 7 at 2. In this third report, Lighthouse described its investigation of Mr. Berg's claims and concluded that the new information Mr. Berg provided did not support his allegations. *Id.* at 3–6.

It seems fair to describe Mr. Berg's claims in this case as falling into three categories. *First*, he asserts claims against Judge Gearin and Lighthouse under 42 U.S.C. § 1983, alleging that each of them deprived him of various federal constitutional rights in the state-court proceedings. Mr. Berg alleges that his due-process rights under the Fourteenth Amendment were violated by the enforcement of discovery requests "that exceed anything contemplated under" the Minnesota Rules of Civil Procedure, the imposition of sanctions, and the assertedly improper and unnecessary appointments of Judge Gearin and Lighthouse. Compl. ¶¶ 34–43. Mr. Berg alleges that his confrontation rights under the Sixth Amendment were violated because he was prevented from cross-examining Ms. Berg and other witnesses. *Id.* ¶¶ 44–47. Mr. Berg also alleges that the Dakota County District Court's orders defaulting and incarcerating him and the Minnesota Court of Appeals' order denying his petition for a writ of prohibition violated his "constitutional right to present a defense" in a civil action. *Id.* ¶¶ 48–51. *Second*, Mr. Berg asserts a claim against all Defendants under 42 U.S.C. § 1985, alleging that they conspired to "threaten and intimidate" him and violated his "right to equal protection of the laws." *Id.* ¶¶ 52–53. *Third*, Mr. Berg asserts a claim against Ms. Berg for breach of fiduciary duty

under Minnesota law. *Id.* ¶¶ 29–33. To support this claim, Mr. Berg alleges that Ms. Berg "both individually and as a Member/Governor of Majestic [], has engaged in acts or omissions not in good faith that involve intentional misconduct or a knowing violation of the law from which she derived an improper personal benefit." *Id.* ¶ 32. Mr. Berg asserts this claim "on behalf of Majestic," *id.* ¶ 16, and "based upon information and belief," *id.* ¶ 18. Mr. Berg seeks declaratory and injunctive relief that would undo orders entered against him in state court, damages from Ms. Berg for her alleged breach of fiduciary duty, attorney's fees and costs, and "such other and further relief as the Court deems just and proper." *Id.* at 15–17 (following the "WHEREFORE" clause).

II

Mr. Berg's claims in this case present exceptional circumstances requiring abstention under *Younger v. Harris*, 401 U.S. 37 (1971). As a general rule, the presence of federal jurisdiction compels its exercise, and the mere presence or possibility of concurrent state-court litigation involving the same parties or issues does not justify its abdication. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813–14, 817–18 (1976); *see also Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). "*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint Commc'ns*, 571 U.S. at 72. The Supreme Court has "extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions" and to civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* at 72–73. State-court contempt

proceedings are in the akin-to-criminal-prosecutions category. "The contempt power lies at the core of the administration of a State's judicial system," and "federal-court interference with the State's contempt process is 'an offense to the State's interest . . . likely to be every bit as great as it would be [in] a criminal proceeding [in the State court].'" *Juidice v. Vail*, 430 U.S. 327, 335–36 (1977) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). A federal court's "interference with the contempt process not only unduly interferes with the legitimate activities of the State, . . . but also can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles." *Id.* at 336 (internal quotations omitted) (citing *Younger*, 401 U.S. at 44, and *Huffman*, 420 U.S. at 604).

Our Eighth Circuit Court of Appeals understands *Younger* to require federal courts to "abstain from exercising their jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal questions." *Curd v. City of Searcy*, 739 Fed. App'x 359, 360 (8th Cir. 2018) (per curiam) (quoting *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012)). Whether an ongoing state proceeding implicates important state interests must be evaluated in light of the Supreme Court's description of the circumstances fitting the *Younger* doctrine as "exceptional" and the Court's directive that it would be improper for a federal court to abstain under *Younger* merely out of "deference to the States." *Sprint Commc'ns*, 571 U.S. at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 368 (1989)). To satisfy the third prong, all that is required is "that [Plaintiff] had an opportunity to present [his] federal claims in the state

9

proceedings." *Juidice*, 430 U.S. at 337. The state court need not have a hearing on the claims, nor must a plaintiff ultimately succeed on his claims. *Id.* Rather, a plaintiff "need be accorded only an opportunity to fairly pursue [his] constitutional claims in the ongoing state proceedings[.]" *Id.* (citing *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)). "For purposes of applying *Younger* abstention, the relevant time for determining if there are ongoing state proceedings is when the federal complaint is filed." *Tony Alamo*, 664 F.3d at 1250. Further, "*Younger* requires a federal court to abstain not only when and while the state trial court proceedings [are] ongoing, but until the state defendant (and federal plaintiff) exhausts his appellate remedies." *Id.* (citing *Huffman*, 420 U.S. at 608–09).

All three elements of the Eighth Circuit's test are met here.[1] At the time Mr. Berg filed his federal complaint, the dissolution proceeding was pending in front of Judge Asphaug. *Compare* Compl. (filed October 8, 2019), *with In re the Marriage of Janie Warren Berg and David A Berg*, No. 19HA-FA-17-406 (Minn. Dist. Ct. 2017) (case filed Aug. 7, 2017; judgment entered Jan. 2, 2020; case reopened). Mr. Berg's claims seek federal-court interference with the state district court's contempt and sanctions power, an important state interest. Mr. Berg's federal claims seek this interference head on. The first sentence of his complaint describes that the point of this case is "to obtain declaratory and injunctive relief directed at the state district court" because, as Mr. Berg alleges, the imposition of sanctions against him resulted in "an unconstitutional denial of [his] right to

---

[1] At the hearing on Defendants' motions, Mr. Berg conceded his claims in this case satisfied the first two elements of the Eighth Circuit's *Younger* test. He disputed only the third element.

10

due process and the right to cross examine witnesses and appear in court in his own defense." Compl. ¶ 1. In his request for relief at the conclusion of his complaint, Mr. Berg seeks a series of declaratory judgments and injunctions designed to undo the state district court's finding of contempt and its imposition of other sanctions against him. Compl. at 15–17, ¶¶ 3–8. Mr. Berg's damages claim against Ms. Berg for breach of fiduciary duty may not appear to be aimed at the state district court, but it is. Mr. Berg's allegations supporting his breach-of-fiduciary-duty claim in this case are essentially the same misconduct allegations he asserted against Ms. Berg in the state-court proceedings. Mr. Berg acknowledges in his complaint that his misconduct allegations against Ms. Berg were a "central and critical issue in the state court case." Compl. ¶ 47. And the state-court orders that Mr. Berg here challenges as unconstitutional were closely intertwined with Lighthouse's determinations that his misconduct allegations against Ms. Berg were without merit. *See* Feldhaus Decl., Ex. 3 at 5 (recognizing Lighthouse "struggled to obtain even basic cooperation from" Mr. Berg and referencing Lighthouse's first and second reports); *id.*, Ex. 7 at 3 (noting Mr. Berg "ignored the issue at hand and ma[d]e a string of allegations of corruption and subterfuge against [Ms. Berg]"); *cf. Stivers v. Minnesota*, 575 F.2d 200, 203 (8th Cir. 1978) (affirming the district court's application of *Younger* abstention to federal plaintiffs who were not parties to state proceedings because their interests were "closely intertwined" with federal co-plaintiffs who were parties to state proceedings). Adjudicating Mr. Berg's claim for breach of fiduciary duty in this case thus would risk contradicting and undermining, not just the state district court's resolution of Mr. Berg's misconduct allegations against Ms. Berg, but the state district court's contempt and

sanctions orders as well.[2] Finally, the record shows that Mr. Berg has pursued his federal claims in the state-court dissolution proceedings. In his petition for a writ of prohibition to the Minnesota Court of Appeals, for example, he made essentially the same arguments he asserts as claims in his complaint in this case. *See* Feldhaus Decl. Ex. 8. And Mr. Berg's opportunities to pursue his federal claims did not end with his petition for a writ of prohibition. As the Minnesota Court of Appeals noted in denying his petition, he may assert these claims in a direct appeal "in the ordinary course of the law." Feldhaus Decl. Ex. 9 at 3.

*Younger* abstention warrants dismissal and not a stay of this case. "Where *Younger* abstention is otherwise appropriate, the district court generally must dismiss the action, not stay it pending final resolution of the state-court proceedings." *Tony Alamo*, 664 F.3d at 1251. It is true that the Eighth Circuit has said that a stay rather than dismissal is proper when the plaintiff seeks an award of damages and a damages award "would not require us first to declare unconstitutional a state statute or to overturn a state court judgment on a matter of state policy," *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 482 (8th Cir. 1998), and "that so long as a possibility of return to federal court remains, a stay rather than

---

[2] One example demonstrates this point. The state district court's order granting Ms. Berg's motion to proceed by default was, in no small part, premised on Mr. Berg's failure to purge his civil contempt by complying with numerous outstanding discovery orders. *See* Feldhaus Decl., Ex. 6 at 2 ("[T]he Special Master leaves no room for doubt that [Mr. Berg] failed to adequately comply with discovery."). By granting Ms. Berg's motion to proceed by default, the state district court forbade him from seeking or presenting evidence of Ms. Berg's alleged embezzlement. Adjudicating Mr. Berg's fiduciary-breach claim here would entail discovery into this area, thus effectively undoing a significant element of the state district court's sanctions order and contempt process.

a dismissal is the preferred mode of abstention," *Fuller v. Ulland*, 76 F.3d 957, 960–61 (8th Cir. 1996) (quotation omitted). But these conditions do not apply to Mr. Berg's claims. As explained above, awarding damages on Mr. Berg's breach-of-fiduciary-duty claims would undermine the state-court's contempt and sanctions decisions. Assuming he raises them, Mr. Berg's constitutional challenges to the state district court's contempt and sanctions orders will be adjudicated to conclusion as part of his appeal and any discretionary review granted after that.[3]

III

Lighthouse seeks sanctions—specifically, "an award of fees and costs," Mem. in Supp. of Sanctions at 14 [ECF No. 33]—in response to the assertion of claims against it in this case. Lighthouse argues that an award of sanctions is appropriate under

---

[3] If Mr. Berg's fiduciary-breach claim was not subject to abstention and dismissal under *Younger*, dismissal would remain appropriate because the claim is not plausibly pleaded. Mr. Berg alleges that Ms. Berg "owes the company" a fiduciary duty imposed by Minn. Stat. § 322C.0409. Compl. ¶ 31. Minnesota law permits Mr. Berg to bring a direct action against Ms. Berg for breach of her duty of loyalty or care only if he "plead[s] . . . an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." Minn. Stat. § 322C.0901, subd. 2. Mr. Berg pleads no such injury, rendering a direct action implausible. Reflecting an intent not to pursue a direct action, Mr. Berg alleges that the breach-of-fiduciary-duty claim is Majestic's, Compl. ¶ 14, and that he brings the claim on behalf of Majestic, *Id.* ¶ 16. But Majestic cannot be a party to this case without destroying the independent basis for federal jurisdiction over this claim. "An LLC's citizenship is that of its members for diversity jurisdiction purposes." *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). The Bergs are the only members of Majestic, meaning that there cannot be diversity of citizenship in a suit between it and Ms. Berg.

28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, and the Court's inherent authority. The motion will be denied.[4]

Sanctions are not available under § 1927 "for simply commencing a frivolous lawsuit." *Gurman v. Metro Hous. and Redev. Auth.*, 884 F. Supp. 2d 895, 900–901 (D. Minn. 2012) (citing *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65 (1st Cir.2008) ("[W]e join an unbroken band of cases across the courts of appeals holding that a lawyer cannot violate section 1927 in the course of commencing an action."), and *In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431, 435 (9th Cir.1996) ("The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927.")). As the First Circuit explained in *Jensen*, "[c]ommencing a proceeding is not the same as multiplying a proceeding. In our view, then, Congress's use of the verb 'multipl[y]' in the text of the statute clearly contemplates that, to be sanctionable thereunder, conduct must have an effect on an already initiated proceeding." *Id.*, 546 F.3d at 65. It thus seems untenable to understand § 1927's use of the phrase "any case" to mean

---

[4] The decision to abstain and dismiss Mr. Berg's complaint under *Younger* does not bar consideration of Lighthouse's sanctions motion. A federal district court retains jurisdiction to rule on a motion for sanctions after a dismissal is filed. *Kurkowski v. Volcker*, 819 F.2d 201, 203 (8th Cir.1987). This is so because "the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). Federal courts have recognized that a district court that lacks subject-matter jurisdiction nonetheless retains the power to impose Rule 11 sanctions. *See Willy v. Coastal Corp.*, 915 F.2d 965, 968 (5th Cir. 1990), *aff'd* 503 U.S. 131 (1992); *Chemiakin v. Yefimov*, 932 F.2d 124, 129 (2d Cir. 1991); *Wojan v. General Motors Corp.*, 851 F.2d 969, 973 (7th Cir. 1988). If a court without subject-matter jurisdiction retains that power, it follows that a court that has subject-matter jurisdiction but abstains under *Younger* also would retain power to adjudicate a sanctions motion.

anything but the federal case in which sanctions are sought. Regardless, though Lighthouse argues that Mr. Berg brought this case "in an effort to delay adjudication of the State Court matter and to increase the costs associated with the resolution thereof," Mem. in Supp. of Sanctions at 9, nothing shows this happened. As far as the record here shows, the state district court's adjudication of the dissolution proceeding was not affected by the commencement of this case or anything that has happened in it since.

Rule 11 and inherent-authority sanctions will not be imposed because it seems more reasonable to excuse Mr. Berg's counsel than to hold him accountable for (apparently) violating the "*Barton* rule" and because the record does not show that Mr. Berg brought this case for an improper purpose. Sanctions may be imposed against counsel under Rule 11(b)(2) when "the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017). A lawyer—at least one who does not regularly represent or sue court-appointed receivers—may be forgiven for confessing ignorance of the *Barton* rule. The rule gets its name from *Barton v. Barbour*, 104 U.S. 126 (1881). The rule says that a receiver appointed by a court in equity generally cannot be sued unless the would-be plaintiff first obtains "leave of the court by which [the receiver] was appointed." *Id.* at 128. The basic statement of the rule is straightforward enough, and federal courts continue to affirm the rule's "continuing vitality." *Republic Bank of Chicago v. Lighthouse Mgmt. Grp., Inc.*, 829 F. Supp. 2d 766, 772 (D. Minn. 2010). But it's not among the more noteworthy Supreme Court cases or rules one ordinarily might expect to have covered in law school or on a bar exam, and a study of the rule generates questions pretty quickly.

15

Research shows that *Barton* has been cited once by the Minnesota Supreme Court in *Schmidt v. Gayner*, 61 N.W. 333 (Minn. 1894), and not since by either that court or the Minnesota Court of Appeals. In *Schmidt*, the plaintiff sued a court-appointed receiver to "recover money alleged to have been collected by [the receiver] 'for and on behalf' of the plaintiff." *Id.* Justice William Mitchell, after observing that "[t]here are probably several reasons why plaintiff cannot maintain this action," explained that dismissal was proper because the plaintiff had not only failed to obtain leave to bring the case from the court that appointed the receiver but also sought "to recover from the receiver money actually in his possession under the order of the court." *Id.* at 334. Justice Mitchell noted that the court reached its decision "without determining what the effect of a failure to obtain leave to sue would be in actions not interfering with the actual possession by the receiver of property or money which he holds under order of the court." *Id.* This case appears to present the question left undetermined in *Schmidt* (because Mr. Berg does not here seek recovery of property held by Lighthouse), and no Minnesota case has been found or cited determining this issue. The Eighth Circuit has cited *Barton* and its rule more often and more recently than the Minnesota appellate courts. Most recently, in *Alexander v. Hedback*, 718 F.3d 762 (8th Cir. 2013), the court held "that the *Barton* doctrine applies to bankruptcy trustees and remains good law even after enactment of the Bankruptcy Reform Act of 1978." *Id.* at 767. The Eighth Circuit's resolution of that bankruptcy question, and its application of the *Barton* rule to the damages claims and unique thirteen-years-long procedural history in *Alexander*, are not particularly apposite here. No doubt there may be cases where a lawyer's failure to understand and correctly apply lesser-known and even very difficult law

16

will warrant the imposition of sanctions, but considerations here—the *Barton* rule's origin, the scarcity with which it has been cited and applied, and complexities surrounding its application that neither party has addressed—tilt in favor of finding that Mr. Berg's counsel did not intentionally or recklessly disregard his duties.[5]

Lighthouse argues that Rule 11 and inherent-authority sanctions are warranted also because Mr. Berg brought this case to delay adjudication of the state-court case and to harass Lighthouse by deterring it from carrying out its duties as court-appointed receiver. Mem. in Supp. of Sanctions at 9–10. As discussed earlier, the record in this case does not show that the filing of this case caused delay in the dissolution case. There also is no evidence showing that the filing of this case has deterred Lighthouse or held any adverse consequences in connection with its performance of its duties.

---

[5]  Perhaps further evidencing the challenges posed by *Barton*, Lighthouse's presentation of its sanctions motion did not exhibit a perfect understanding of the rule. Federal courts have said that non-compliance with the rule leaves a federal court without subject-matter jurisdiction. *See*, *e.g.*, *Freeman v. County of Orange*, 669 Fed. App'x 348, 348–49 (9th Cir. 2016); *Republic Bank of Chicago*, 829 F. Supp. 2d at 772–73. Lighthouse did not mention the absence of subject-matter jurisdiction specifically as part of its argument for dismissal under *Barton*. Regardless, Lighthouse's motion was sound and prompted searching consideration.

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Defendant Lighthouse Management Group, Inc.'s Motion to Dismiss [ECF No. 5] is **GRANTED**.

2. Defendant Janie Warren Berg's Motion to Dismiss [ECF No. 13] is **GRANTED**.

3. Defendant Kathleen Gearin's Motion to Dismiss [ECF No. 19] is **GRANTED**.

4. Defendant Lighthouse Management Group, Inc.'s Motion for Sanctions [ECF No. 31] is **DENIED**.

5. Plaintiff's complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 30, 2020

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court